# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **SHAKOOR MINTU, AND MOHD CHOWDHURY** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **vs.** | ) | **1:25-CV-05314-ELR-JSA** |
| | ) | |
| **SELECT PORTFOLIO** | ) | |
| **SERVICING, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

COME NOW, Shakoor Mintu ("Mintu") and Mohn Chowdhury ("Chowdhury"), Plaintiffs herein and pursuant to Rule 15 (a)(1)(b) files Plaintiffs' First Amended Complaint against Defendant for violations of the Bankruptcy Discharge Injunction, FDCPA, RESPA, and TILA, which are Federal consumer financial laws. 12 U.S.C. § 5481(14). Under Section 1036 of the CFPA, it is unlawful for any covered person "to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law or otherwise commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A). Violations of the FDCPA, RESPA, and TILA are

therefore violations of Section 1036 of the CFPA. 12 U.S.C. § 5536(a)(1)(A) as follows:

## I.    INTRODUCTION AND NATURE OF THE DISPUTE

1.    This case arises from a **longstanding and recurring pattern of unlawful foreclosure activity** directed against the residential property located at **821 Wisteria View Court, Dacula, Georgia 30019** (the "Property"). For nearly two decades, mortgage servicers and securitized trust entities have sought to foreclose upon a loan that was (a) originated through fraud and misrepresentation, (b) repeatedly transferred through defective and unrecorded assignments, and (c) ultimately **discharged in bankruptcy** in 2015.

2.    Plaintiffs **Shakoor Mintu** and **Mohd Sajjad Chowdhury** are the individuals most directly affected by this continuing misconduct. Mintu is the nominal borrower whose name was placed on the original 2006 loan with *Home America Mortgage, Inc.* under a builder-imposed lending condition, while Chowdhury paid the purchase deposit, occupied the home from completion, and has remained in continuous possession since 2006. The builder and lender represented that Chowdhury would be added as borrower after closing, a representation that was never honored.

3.    In 2012, Mintu filed **Mintu v. Ocwen Loan Servicing, LLC et al., No. 1:12-cv-2917-TCB (N.D. Ga.),** challenging the same loan and asserting that

neither Ocwen, MERS, nor their successors held the promissory note or possessed lawful authority to foreclose. That action placed the mortgage industry and subsequent servicers on notice that the chain of title and assignments were **legally defective and disputed**.

4.      Despite that notice, the servicing rights were later transferred through **Saxon Mortgage**, **Nationstar Mortgage (now Select Portfolio Servicing, Inc.)**, and ultimately into **Towd Point Mortgage Trust 2017-FRE2, U.S. Bank N.A. as Indenture Trustee**, which in 2025 commenced another nonjudicial foreclosure using the same invalid instruments. The foreclosure notice was published on **August 6, 2025**, scheduling sale for **September 2, 2025**.

5.      Mintu, however, had obtained a **Chapter 13 discharge** on **March 20, 2015**, in *In re Shakoor Mintu*, Case No. 09-88751-BEM (Bankr. N.D. Ga.). That discharge extinguished any personal liability on the 2006 note. No reaffirmation agreement was ever filed or approved. As a result, the 2025 foreclosure effort sought to collect and enforce a **discharged and unenforceable debt** in violation of the **Bankruptcy Code, 11 U.S.C. § 524(a)**.

6.      Plaintiffs allege that Defendants **Select Portfolio Servicing**, **Towd Point Mortgage Trust 2017-FRE2**, and their foreclosure counsel **McCalla Raymer Leibert Pierce, LLP** have violated multiple federal and state laws, including the **Bankruptcy Code**, the **Fair Debt Collection Practices Act**

("FDCPA"), the **Real Estate Settlement Procedures Act** ("RESPA"), and Georgia's **nonjudicial-foreclosure statutes**. The violations include misrepresenting debt ownership, continuing collection activity after discharge, and publishing a foreclosure notice without the lawful authority of the noteholder.

7.    The relief sought is declaratory, statutory, and equitable. Plaintiffs request that this Court:

(a) declare that the debt was discharged and the 2025 foreclosure is **void**;

(b) enjoin further foreclosure or eviction efforts;

(c) recognize **Chowdhury's equitable ownership** of the property under constructive-trust principles; and

(d) award damages and attorney's fees for Defendants' continuing violations of federal law and Georgia statutory protections.

## II.    JURISDICTION AND VENUE

8.    This Court has federal-question jurisdiction under **28 U.S.C. § 1331**, as this action arises under the **Fair Debt Collection Practices Act (FDCPA)**, 15 U.S.C. § 1692 et seq.; the **Real Estate Settlement Procedures Act (RESPA)**, 12 U.S.C. § 2601 et seq.; and **11 U.S.C. § 524(a)** of the U.S. Bankruptcy Code.

9.    This Court has supplemental jurisdiction over the accompanying state-law claims under **28 U.S.C. § 1367(a)** because those claims derive from the same nucleus of operative facts.

10.     Venue is proper in this District under **28 U.S.C. § 1391(b)(2)** because the real property that is the subject of this dispute is located in **Gwinnett County, Georgia**, which lies within the Atlanta Division of this Court.

### III.   PARTIES

11.     **Plaintiff Mohd Sajjad Chowdhury** is an individual residing at **821 Wisteria View Court, Dacula, GA 30019**, and has continuously occupied and maintained that property since 2006.

12.     **Plaintiff Shakoor Mintu** is an individual residing in **DeKalb County, Georgia**. Mintu was listed as borrower on a mortgage loan originated in 2006 but obtained a **Chapter 13 discharge on March 20, 2015** (Case No. 09-88751-BEM, N.D. Ga. Bankr. Ct.).

13.     **Defendant Select Portfolio Servicing, Inc. ("SPS")** is a Utah corporation with its principal office at **3217 South Decker Lake Drive, Salt Lake City, UT 84119**, and is the current servicer of the subject loan.

### IV.   FACTUAL BACKGROUND

1.     In 2006, Home America Mortgage, Inc. originated a loan in the amount of **$213,650**, secured by a **Security Deed recorded in Deed Book 47208, Page 239, Gwinnett County Records**, naming **Mintu** as borrower and **Mortgage Electronic Registration Systems, Inc. (MERS)** as nominee for the lender. The Coosawilla Limited Warranty Deed is attached as **Exhibit "A."**

2.      Plaintiff **Chowdhury**, not Mintu, paid the builder's deposit and has resided at the property since 2006. The builder required use of its preferred lender and unexpectedly closed the loan solely in Mintu's name.

3.      In **2016**, Nationstar Mortgage, LLC (now SPS) executed a **Freddie Mac Standard Loan Modification Agreement**, recorded in the Gwinnett County Property Records at **Deed Book 54143, Page 432**, purporting to modify the original note and deed. ("2016 Modification Agreement") (**Exhibit "B").**

4.      On **March 20, 2015**, Mintu received Chapter **13 discharge** in Case No. 09-88751-BEM. The discharge extinguished any personal liability on the mortgage debt, and no reaffirmation was filed or approved.

5.      After the discharge, SPS continued to service the loan and later transferred or assigned it into **Towd Point Mortgage Trust 2017-FRE2**.

6.      On **August 6, 2025**, MRLP, on behalf of SPS and Towd Point Trust, published a **Notice of Sale Under Power** scheduling foreclosure for **September 2, 2025**, referring to both the 2006 deed and 2016 modification.

7.      The notice identified **Select Portfolio Servicing, Inc.** as the entity with authority to modify the debt, despite the discharge extinguishing personal liability.

8.     Plaintiffs informed SPS and MRLP that the debt had been discharged and that **Chowdhury** was the equitable owner, but foreclosure proceedings continued.

9.     On **September 17, 2025**, Defendant SPS removed the action to this Court as **Case No. 1:25-CV-05314-ELR-JSA**.

10.    The foreclosure and related collection actions violate federal discharge protections, debt collection laws, and Georgia foreclosure statutes.

## COUNT I—DECLARATORY JUDGMENT
## (28 U.S.C. § 2201; O.C.G.A. § 9-4-2)

11.    Plaintiffs refer to and incorporate Paragraphs 1 through 10 by reference as if set forth in full herein.

12.    By pursuing foreclosure and collection on a discharged debt, Defendants violated the federal discharge injunction.

13.    O.C.G.A. § 9-4-2(a) provides that Courts shall have the power, upon appropriate pleading, to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and that the declaration shall have the force and effect of a final judgment.

14.    O.C.G.A. § 9-4-2(c) provides that relief by declaratory judgment shall be available notwithstanding the fact that the complaining party has any other adequate legal or equitable remedies.

15.    Such conduct is void and subjects Defendants to damages and sanctions under **11 U.S.C. § 105(a)**.

## COUNT II – VIOLATION OF BANKRUPTCY DISCHARGE (11 U.S.C. § 524(a))

16.    Plaintiffs refer to and incorporate Paragraphs 1 through 15 by reference as if set forth in full herein.

17.    Such conduct is void and subjects Defendant to damages and sanctions under U.S.C. § 105(a).

## COUNT III – FDCPA VIOLATIONS (15 U.S.C. §§ 1692e, 1692f)

18.    Plaintiffs refer to and incorporate Paragraphs 1 through 17 by reference as if set forth in full herein.

19.    Defendants, acting as debt collectors, made false, deceptive, or misleading representations regarding the legal status of the debt and employed unfair means to collect.

20.    These actions violate **15 U.S.C. § 1692e(2)** and **§ 1692f(1)**.

## COUNT IV – RESPA VIOLATIONS (12 U.S.C. § 2605; 12 C.F.R. § 1024.41)

21.    Plaintiffs refer to and incorporate Paragraphs 1 through 20 by reference as if set forth in full herein.

22.    SPS failed to provide timely and complete responses to borrower inquiries and continued foreclosure activity while loss-mitigation communications were pending, in violation of **Regulation X**.

23.    Plaintiffs suffered harm including clouded title, emotional distress, and litigation costs.

**COUNT V – WRONGFUL FORECLOSURE (O.C.G.A. § 44-14-162.2)**

24.    Plaintiffs refer to and incorporate Paragraphs 1 through 23 by reference as if set forth in full herein.

25.    Defendant failed to provide statutory notice of the identity of the secured creditor and the proper 30-day pre-sale period.

26.    Accordingly, the foreclosure is void or voidable under Georgia law.

27.    As an initial matter a "claim for wrongful exercise of a power of sale can be asserted even though a debt is in default." Brown v. Freedman, 222 Ga.App. 213, 215, 474 S.E.2d 73, 76 (1996). The cause of action may be based upon fraud, intentional tort, negligence, breach of contract by the creditor, or intentional failure to comply with statutory duty. Ga. Real Estate Finance and Foreclosure Law § 8:11 (2012-2013 ed.).

28.    Defendant participated in foreclosure proceedings where it failed to comply with the requirements of O.C.G.A. § 44-14-162.2 and the foreclosure was unauthorized because the Defendant failed to provide a right to cure prior to acceleration. Premature acceleration and failure to comply with statutory notice requirements are circumstances that would support a claim for wrongful

foreclosure. See <u>BAC Home Loans Servicing, L.P. v. Wedereit,</u> 328 Ga. App. 566 (2014) and <u>Babaloa v. HSBC Bank U.S.A., N.A.,</u> 324 Ga.App. 750 (2013).

29.    Under O.C.G.A. § 23-2-114, [p]ower of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised." A claim for wrongful foreclosure pursuant to O.C.G.A. § 23-2-214 can arise when a creditor forecloses on property without the legal right to do so, in violation of the terms of the deed. <u>Brown v. Freedman</u>, 222 Ga. App. 213, 214(1), 474 S.E.2d 73 (1996). Where the deed requires the lender to provide an opportunity to cure before accelerating the loan and the lender fails to do so, the debt acceleration is premature. <u>Zions First National Bank</u>, supra, 316 Ga.App. at 752-753(4)(a), 730 S.E.2d 462.  The right to accelerate is premised on a default, but if the default is cured, there is not a right accelerate and thus no power of sale. <u>MPP Invs, Inc. v. Cherokee Bank, N.A.</u>, 288 Ga. 558, 563; 707 S.E.2d 485 (2011).

30.    A breach of statutory duty to conduct a foreclosure sale fairly and in good faith is a tort which permits the award of punitive damages. A law firm that conducts a wrongful foreclosure may be liable, in certain circumstances, for damages. Even though acting as an agent for the creditor, an agent can be held independently liable. Ga. Real Estate and Foreclosure Law § 8:11 (2012-2013 ed.).

31.    Defendant failed to send the Notice of Default and Acceleration and Notice of Foreclosure. (Collectively referred to hereinafter as "Notices").

32.     A claim for wrongful exercise of power of sale under O.C.G.A. §23-2-114 can arise when the creditor has no legal right to foreclose.

33.     Due to multiple violations of Georgia law, set forth in detail above, Defendant did not have the right to foreclose, and thereby foreclosed wrongfully.

34.     Breach of the statutory duty upon mortgagee to exercise fairly and in good faith the power of sale in a deed to secure debt is a tort compensable at law and entitles the debtor to punitive damages where appropriate.

35.     As a direct and proximate result of the conduct of Defendant, Plaintiffs have suffered great mental anguish, humiliation, concern, worry, and wounded feelings.

36.     As a direct and proximate result of the conduct of Defendant, the Plaintiffs suffered pecuniary loss in the expenditure for attorney's fees, expert fees and associated costs and expenses.

37.     As a direct and proximate result of the conduct of Defendants, the Plaintiffs have suffered pecuniary loss in the form of additional interest, fees and costs levied by Defendant.

## COUNT VI – CONSTRUCTIVE AND RESULTING TRUST / EQUITABLE REFORMATION

38.     Plaintiffs refer to and incorporate Paragraphs 1 through 26 by reference as if set forth in full herein.

39.    Chowdhury paid the consideration for the property and has occupied and maintained it since 2006.

40.    Equity imposes a constructive or resulting trust recognizing Chowdhury as the beneficial owner.

## COUNT VII – FRAUD IN THE INDUCEMENT AND MISREPRESENTATION

41.    Plaintiffs refer to and incorporate Paragraphs 1 through 30 by reference as if set forth in full herein.

42.    Home America Mortgage and its agents misrepresented closing terms, inducing Plaintiffs to proceed despite undisclosed changes to borrower designation.

43.    Subsequent assignees, including SPS and Towd Point Trust, took subject to these defects.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Declare that Defendant's foreclosure and lien enforcement are void due to discharge and statutory violations;

B. Enter judgment for damages for violations of **11 U.S.C. § 524**, **FDCPA**, and **RESPA**;

C. Recognize Plaintiff **Chowdhury's equitable ownership** under a constructive trust;

D. Award reasonable attorney's fees and costs pursuant to **15 U.S.C. § 1692k(a)** and **O.C.G.A. § 13-6-11**;

E. Grant any additional equitable or declaratory relief deemed just and proper by this Court

## VI. JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted, this is the 23rd day of October 2025.

<u>s/ KaRon Grimes</u>
Karon Grimes
Grimes Law Firm
Georgia Bar No. 782008
5425 Peachtree Parkway
# 109
Peachtree Corners, Georgia 30092
Phone: (678) 232-6208
Fax: (678) 264-0988
*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SHAKOOR MINTU, AND MOHD CHOWDHURY | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION NO.:** |
| **vs.** | ) | **1:25-CV-05314-ELR-JSA** |
| | ) | |
| SELECT PORTFOLIO SERVICING, INC. | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and font size of 14.

This 23rd day of October 2025.

THE GRIMES LAW FIRM

*/s/ KaRon L. Grimes*
KaRon L. Grimes
Georgia Bar No. 782008
5425 Peachtree Parkway, NW #109
Peachtree Corners, Georgia 30092
Phone: (678) 232-6208
Fax: (678) 264-0988

jubileecounsel@gmail.com
*Attorney for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **JERONICA DOWDY** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CASE NO.: 2-23-CV-00162-** |
| ) | **RWS-JCF** |
| **v.** ) | |
| ) | |
| **UNITED ASSET MANAGEMENT,** ) | |
| **LLC and OCWEN LOAN** ) | |
| **SERVICING, LLC** ) | |
| ) | |
| **Defendants.** ) | |
| ————————————————— ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing **PLAINTIFFS'**

**FIRST AMENDED COMPLAINT** has been sent electronically via the ECF

system to registered users who have appeared as counsel for the Defendant herein

as follows:

George G. Robertson, Esq.
Georgia Bar No. 137995
George.Robertson@hklaw.com
HOLLAND & KNIGHT LLP
811 Main Street, Suite 2500
Houston, Texas 77002
Tel: (713) 821-000
*Attorney for Defendant*

This 23rd day of October 2025.

**THE GRIMES LAW FIRM**

*/s/ KaRon L. Grimes*
KaRon L. Grimes, Esq.
Georgia Bar No. 782008
*Attorney for Plaintiffs*

# EXHIBIT

## "A"

BK 4 7 2 0 8 PG 0 2 3 9

FILED AND RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY GA

06 NOV -3 PM 2:00

TOM LAWLER, CLERK

GEORGIA INTANGIBLE TAX PAID

$ 642.00

TOM LAWLER
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

After Recording Return To:
**HALEY & HALEY**
**4484 COMMERCE DRIVE, STE A, ST, STE A**
**BUFORD          , GA      30518**

otice: This mortgage is subject to special rules under the Georgia Fair Lending Act.

rchasers and assignees of this mortgage may be liable for all claims and defenses by the borrower with respect to the
ortgage.

tice: This is a mortgage subject to special rules under the federal Truth in Lending Act. Purchasers or assignees of this
ortgage could be liable for all claims and defenses with respect to the mortgage that the borrower could assert against the
editor. ————————————————— [Space Above This Line For Recording Data] —————————————————

# SECURITY DEED

MIN: 100029500013980960

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20
and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "**Security Instrument**" means this document, which is dated **October 18, 2006**                    , together with all
Riders to this document.

(B)  "**Borrower**" is **Shakoor Mintu**

Borrower is the grantor under this Security Instrument.

(C)  "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a
nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI
48501-2026, tel. (888) 679-MERS.

(D)  "**Lender**" is **Home America Mortgage, Inc.**
Lender is a **a Florida Corporation**                                     organized and existing under
the laws of **FL**                                                      . Lender's address is
**101 NE 2nd Street, Ocala, FL  34470-6642**

(E)  "**Note**" means the promissory note signed by Borrower and dated **October 18, 2006**                . The Note
states that Borrower owes Lender **Two Hundred Thirteen Thousand Six Hundred Fifty and no/100**
                          Dollars (U.S. $ **213,650.00**           ) plus interest. Borrower has promised
to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 01, 2036**

(F)  "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**GEORGIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                          Form **3011 1/01**
                                                                                            GREATLAND ■
ITEM T9679L1 (0011)—**MERS**                    *(Page 1 of 12 pages)*          To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131


*0240661398096*

0181102

46

BK 4 7 2 0 8 PG 0 2 4 0

**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
|---|---|---|
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [V] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | *Waiver of Borris Right.* |

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**GEORGIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3011 1/01**
GREATLAND ■
ITEM T9879L2 (0011)—**MERS**          *(Page 2 of 12 pages)*          To Order Call: 1-800-530-9393 □Fax: 616-791-1131

BK47208PG0241

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County**                        of                    **Gwinnett**                        :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
**See Attached Exhibit A.**

which currently has the address of                      **821 Wisteria View Ct**
                                                                      [Street]

**Dacula**                    , Georgia          **30019**                  ("Property Address"):
[City]                                              [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                **Form 3011 1/01**
                                                                                                                      GREATLAND ■
ITEM T9879L3 (0011)—MERS                                      (Page 3 of 12 pages)        To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BK 4 7 2 0 8 PG 0 2 4 2

partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest

BK 4 7 2 0 8 PG 0 2 4 3

or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration

**GEORGIA**—Single Family— **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM T9879L5 (0011)—**MERS**                    *(Page 5 of 12 pages)*

Form 3011 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BK47208PG0244

period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.   Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.   Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

GEORGIA—Single Family— Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9879L6 (0011) —MERS                                *(Page 6 of 12 pages)*

Form 3011 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BK47208PG0247

limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property

GEORGIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9879L9 (0011)—**MERS**                    *(Page 9 of 12 pages)*

Form 3011 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BK47208PG0245

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be

GEORGIA—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                                      Form 3011 1/01
                                                                                                          GREATLAND ■
ITEM T9870L7 (0011)—MERS                          *(Page 7 of 12 pages)*                 To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

BK 4 7 2 0 8 PG 0 2 4 6

applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not

GEORGIA—Single Family— Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM T9879L8 (0011)—MERS                    *(Page 8 of 12 pages)*

Form 3011 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BK 4 7 2 0 8 PG 0 2 4 8

and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

BK 4 7 2 0 8 PG 0 2 4 9

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**GEORGIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM T9879L11 (0011)—**MERS**                    *(Page 11 of 12 pages)*

Form 3011 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

BK 4 7 2 0 8 PG 0 2 5 0

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in pages 1 through 12 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____     _____ (Seal)
Unofficial Witness                   **Shakoor Mintu**                  -Borrower

                                     _____ (Seal)
                                                                        -Borrower

Notary Public, _____  County _____ (Seal)
                                                                        -Borrower
My commission _____

                                     _____ (Seal)
                                                                        -Borrower

                                     _____ (Seal)
                                                                        -Borrower

                                     _____ (Seal)
                                                                        -Borrower

**GEORGIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                Form 3011 1/01
ITEM T9879L12 (0011)—**MERS**             *(Page 12 of 12 pages)*        GREATLAND ■
                                                        To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

**EXHIBIT "A"**       BK 47208 PG 0251

ALL THAT TRACT OR PARCEL OF LAND lying and being in Land Lot 267 of the 5TH District of GWINNETT County, Georgia, being Lot 25, BLOCK A, of WOLF CREEK, UNIT 5 as per plat recorded in Plat Book 110, Page 181-182, GWINNETT County, Georgia records, which plat is incorporated herein and made a part hereof by reference.

(B062237.PFD/B062237/10)

BK47208PG0252

Loan Number: 1398096

# ADJUSTABLE RATE RIDER

( LIBOR Six-Month Index As Published In *The Wall Street Journal* )

- Rate Caps Accrued Interest Only for 10 Years -

THIS ADJUSTABLE RATE RIDER is made this day on _____ **10/18/06** _____ ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's
Adjustable Rate Note (the "Note") to _____ **Home America Mortgage, Inc.**
("Lender") of the same date and covering the property described in the Security Instrument and located at:

**821 Wisteria View Ct, Dacula, GA  30019**
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES
IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE
NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN
CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE
BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of _____ **6.500**%. The Note provides for changes in the
interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the 1st day of **November 2009** _____ , and on that day every
6th month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business
day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my interest rate by adding **Two and Three Quarters**
percentage points ( **2.750** %) to the Current Index. The Note Holder will then round the result of this
addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D)
below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay
the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest
rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than **12.500** _____ % or
less than _____ **2.750** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date
by more than _____ **2.000** _____ percentage points (%) from the rate of interest I have been paying for the preceding 6
months. My interest rate will never be greater than _____ **12.500** %.

C0138L1

BK47208PG0253

(E) Effective Date of Change

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of the first payment consisting of both Principal and Interest on this note (the "First Principal and Interest Payment Due Date") shall be my    121    scheduled monthly payment due date.

**B.TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**Uniform Covenant 18 of the Security Instrument is amended to read as follows:**

Transfer of the Property or a Beneficial Interest in Borrower. **As used in this Section**

**18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.**

**If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.**

**To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.**

**If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.**

**BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.**

_____ (Seal)    _____ (Seal)
**Shakoor Mintu**

_____ (Seal)    _____ (Seal)

_____ (Seal)    _____ (Seal)

C0138L2

BK 47208 PG 0254

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **18th** day of **October 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Home America Mortgage, Inc.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**821 Wisteria View Ct
Dacula, GA 30019**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in



(the "Declaration"). The Property is a part of a planned unit development known as

**WOLFE CREEK**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3150 1/01

ITEM T1622L1 (0011)     *(Page 1 of 2 pages)*     GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

*230101398096*

47208
00255

BK 4 7 2 0 8 PG 0 2 5 5

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this PUD Rider.

_____ (Seal)          _____ (Seal)
**Shakoor Mintu**              -Borrower                                              -Borrower


_____ (Seal)          _____ (Seal)
                              -Borrower                                              -Borrower


_____ (Seal)          _____ (Seal)
                              -Borrower                                              -Borrower


MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3150 1/01

ITEM T1622L2 (0011)                    *(Page 2 of 2 pages)*          GREATLAND ■
                                                                     To Order Call: 1-800-530-9393 ☐ Fax: 616-791-1131

BK 4 7 2 0 8 PG 0 2 5 6

GEORGIA- **Other**

GRANTOR: **Shakoor Mintu**

LENDER:   **Home America Mortgage, Inc.**

DATE OF SECURITY DEED: **10/18/2006**

LOAN NUMBER:   **1398096**

### WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY:(1)
ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER
OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY
NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY
NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER
THE PROVISION OF THE PARAGRAPH 22 HEREOF; (2) WAIVES ANY AND ALL
RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH
AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE
VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES,
OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO
JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR
REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS
SPECIFICALLY REQUIRED TO BE PROVIDED IN PARAGRAPH 22 HERREOF; (3)
ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND
SPECIFICALLY THIS PARAGRAPH AND PARAGRAPH 22  OF THIS DEED AND
ANY ALL QUESTIONS REGARDING LEGAL EFFECT OF SAID DEED AND ITS
PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR HAS BEEN
AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S
CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL
WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE
KNOWINGLY, INTENTIONALLY AND WILLINGLYBY GRANTOR AS PART OF
A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE
PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE
SECURITY DEED.

O.C.G.A. SECTION 7-1-1014 (3) REQUIRES THAT WE INFORM YOU THAT IF
YOU FAIL TO MEET ANY CONDITION OR TERM OF THE DOCUMENTS THAT
YOU SIGN IN CONNECTION WITH OBTAINING A MORTGAGE LOAN YOU
MAY LOSE THE PROPERTY THAT SERVES AS COLLATERAL FOR THE
MORTGAGE LOAN THROUGH FORCLOSURE.

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered
in the presence of

NOTARY PUBLIC

                                    _____ (Seal)
                                    Grantor **Shakoor Mintu**
                                    _____ (Seal)
                                    Grantor
                                    _____ (Seal)
                                    Grantor
                                    _____ (Seal)
                                    Grantor
                                    _____ (Seal)
                                    Grantor
                                    _____ (Seal)
                                    Grantor

M. HENDERSON
NOTARY
EXPIRES
JAN. 4, 2008
GEORGIA
GWINNETT
PUBLIC
COUNTY

C0017L0

47208
00257

BK 4 7 2 0 8 PG 0 2 5 7

### CLOSING ATTORNEY'S AFFIDAVIT

RE: Borrower(s): **Shakoor Mintu**

Lender: **Home America Mortgage, Inc.**

Date: **10/18/2006**

Before the undersigned attesting officer personally appeared the undersigned closing attorney or agent, who having been the first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights" by the Borrower(s), a representative of the firm reviewed with and explained to the Borrower(s) the term and provisions of the Deed to Secure Debt and particularly the provisions thereof, thereof authorizing the Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the "Acknowledgement and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosures in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with an explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Acknowledgement and Waiver of Borrower's Rights.

Based on said review and explanation to the Borrower(s), it is the opinion of the firm that the Borrower(s) knowingly, intentionally and willingly executed the waiver of the Borrower's constitutional rights to notice and judicial hearing prior to any such non-judicial foreclosure.

_____
Closing Attorney

Sworn and subscribed before me
this  10/18/2006

_____
Notary Public

C0016L0

# EXHIBIT

## "B"

BK54143 PG0432

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

2016 MAR -8 PM 2:00

RICHARD ALEXANDER, CLERK

Return to:
Document Recording Services
P.O. Box 3008
Tallahassee, FL 32315-3008

GEORGIA INTANGIBLE TAX PAID
$ 444.00
RICHARD T. ALEXANDER, JR.
SUPERIOR COURT GWINNETT
COUNTY, GEORGIA

This Document Prepared By:
Erica White
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

_____[Space Above This Line For Recording Data]_____

Original Recording Date: **November 03, 2006**
Unpaid Principal Balance: $222,194.80
Original Loan Amount: $213,650.00
New Money: $147,833.76
New Loan Amount: **$370,028.56**

Loan No.: **608320867**
Investor Loan No: **291417663**

REF111853664A

# FREDDIE MAC STANDARD MODIFICATION AGREEMENT

Borrower ("I"): **SHAKOOR MINTU** Borrower is the grantor/mortgagor under the first lien mortgage, deed of trust, or security deed referenced below. If more than one Borrower is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.
Lender or Servicer ("Lender"): **NATIONSTAR MORTGAGE LLC, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019** Lender is the beneficiary/mortgagee under the first lien mortgage, deed of trust, or security deed referenced below.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"). **October 18, 2006** and recorded in Book/Liber **47208**, Page **0239**, Instrument No: **0181102**, of the Official Records of **GWINNETT** County, GA.
Property Address ("Property"): **821 WISTERIA VIEW CT**
**DACULA, GA 30019**

Legal Description:
**See Exhibit "A" attached hereto and made a part hereof;**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Freddie Mac Standard Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send



**FREDDIE MAC STANDARD MODIFICATION AGREEMENT**
8763b 08/14

*(page 1 of 8 pages*

0019150

a8

BK54143 PG0433

me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants**.  I certify, represent to Lender, covenant and agree:

   A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.  The property has not been condemned nor have I received notice of condemnation

   C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.  A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D   I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Freddie Mac Standard Modification Program ("Program"));

   E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Home Affordable Modification Program (HAMP) and Freddie Mac Standard Modification, are true and correct; and

   F.  I have made or will make all payments required under a Trial Period Plan or as directed by my Lender until my Loan Documents are permanently modified in accordance with this Agreement.

   G.  In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement

2.  **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

   A   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.  In that event, the Lender will have all of the rights and remedies provided by the Loan Documents;

   B.  The Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement; and

   C.  **I DO NOT MEET THE ELIGIBILITY REQUIREMENTS FOR A MODIFICATION UNDER THE FEDERAL GOVERNMENT'S HOME AFFORDABLE MODIFICATION PROGRAM AND**





**FREDDIE MAC STANDARD MODIFICATION AGREEMENT**
8763b 08/14

*(page 2 of 8 pages*

BK54143 PG0434

**THEREFORE I WILL NOT RECEIVE ANY INCENTIVE PAYMENTS FOR TIMELY PAYMENTS OF MY MONTHLY PAYMENT.**

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **March 1, 2016** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **March 1, 2016**

A. The Maturity Date will be: **February 1, 2056**.

B. The modified principal balance of my Note will include all amounts and arrearages that are past due past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$370,028.56** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts will accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. **$111,008.57** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$259,019.99**. Interest at the rate of **3.875%** will begin to accrue on the Interest Bearing Principal Balance as of **February 1, 2016** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **March 1, 2016**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Prin & Int Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-40 | 3.875% | February 01, 2016 | $1,062.49 | $446.26 May adjust periodically | $1,508.75 May adjust periodically | March 01, 2016 | 480 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.





**FREDDIE MAC STANDARD MODIFICATION AGREEMENT**
8763b 08/14

*(page 3 of 8 pages)*

BK54143 PG0435

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C

F. I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date

4. **Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other agreement that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the



**FREDDIE MAC STANDARD MODIFICATION AGREEMENT**
8763b 08/14

*(page 4 of 8 pages*

BK54143 PG0436

Loan Documents, and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C Section 1701j-3.  A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan   Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrective Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026,a mailing address of P.O. Box 2026, Flint, MI 48501-2026, a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834, and telephone number of (888)





**FREDDIE MAC STANDARD MODIFICATION AGREEMENT**
8763b 08/14

*(page 5 of 8 pages*

BK54143 PG0437

679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.    In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program, and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note  All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P.  This Agreement modifies an obligation secured by an existing security instrument recorded in GWINNETT County, GA, upon which all recordation taxes have been paid  As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $222,194.80.  The principal balance secured by the existing security instrument as a result of this Agreement is $370,028.56, which amount represents the excess of the unpaid principal balance of this original obligation.

**In the event of any action(s) arising out of or relating to this Agreement or in connection with any foreclosure action(s) dismissed as a result of entering into this Agreement, I will remain liable for and bear my own attorney fees and cost incurred in connection with any such action(s).**



FREDDIE MAC STANDARD MODIFICATION AGREEMENT
8763b 08/14



*(page 6 of 8 pages*

BK54143 PG0438

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**SHAKOOR MINTU** -Borrower

_____ -Witness     _Marvin Wooley_ -Notary Public
Signature                       Signature

_____ [Space Below This Line For Acknowledgments] _____

State of Georgia
County of _Fulton_____

I, _MARVIN WOOLEY_____, a Notary Public residing in the County and State
(please print name)
certify that **SHAKOOR MINTU** who is/are personally known to me, and this day appeared before me and
acknowledged that he/she/they signed, sealed and delivered the foregoing Security Deed of his/her/their
own free will and accord, for the purposes named and expressed in that instrument

In witness, I set my hand and official seal unto this instrument this

_29th_ day Of _January_____ 20 _16_

_Marvin Wooley_____
Signature

_Court Clerk_____
Title of Officer _Notary Public_

My _Commission_ (commission or other office) expires on _January 21st, 2019_ [Date].





**FREDDIE MAC STANDARD MODIFICATION AGREEMENT**
8763b 08/14                                *(page 7 of 8 pages)*

BK54143 PG0439

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender

Name: _____ Erica White

Title: **Assistant Secretary**

Date of Lender's Signature _____2/8/16_____

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of Dallas

Before me _____Azra Habibija_____ /Notary Public (name/title of officer) on this day personally appeared _____Erica White_____ , the Assistant Secretary of Nationstar Mortgage LLC, known to me (or proved to me on the oath of _____ or through _____ (description of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __8th__ day of __February__ , A.D. __2016__



Signature of Officer

_____
Notary Public
Title of Officer

My Commission expires · ____10|9|17____



AZRA HABIBIJA
Notary Public, State of Texas
My Commission Expires
October 09, 2017



**FREDDIE MAC STANDARD MODIFICATION AGREEMENT**
8763b 08/14

*(page 8 of 8 pages)*

BK54143 PG0439

**NATIONSTAR MORTGAGE LLC**

By: _____  (Seal) - Lender

Name: _____

Title: **Assistant Secretary**

Date of Lender's Signature _____

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of Dallas

Before me _____ Azra Habibija _____ /Notary Public (name/title of officer) on this day personally appeared _____ Erica White _____, the Assistant Secretary of Nationstar Mortgage LLC, known to me (or proved to me on the oath of _____ or through _____ (description of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 8th day of February, A.D. 2016

_____
Signature of Officer

_____
Notary Public
Title of Officer

My Commission expires · 10/9/17 _____



AZRA HABIBIJA
Notary Public, State of Texas
My Commission Expires
October 09, 2017



**FREDDIE MAC STANDARD MODIFICATION AGREEMENT**
8763b 08/14

*(page 8 of 8 pages*

BK54143 PG0440

## Exhibit "A"

**Loan Number. 608320867**

**Property Address: 821 WISTERIA VIEW CT, DACULA, GA 30019**

Legal Description:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 267 OF THE 5TH DISTRICT OF GWINNETT COUNTY, GEORGIA, BEING LOT 25, BLOCK A, OF WOLF CREEK, UNIT 5 AS PER PLAT RECORDED IN PLAT BOOK 110, PAGE 181-182, GWINNETT COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.





Exhibit A Legal Description Attachment 11/12

*Page 1 of 1*